IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**MIMI GERMAN,**

        Plaintiff,

v.

**CHLOE EUDALY**, individually and in her official capacity as City of Portland Commissioner; and **THE CITY OF PORTLAND, OREGON,**

        Defendants.

No. 3:17-cv-2028-MO

OPINION AND ORDER

**MOSMAN, J.,**

This matter comes before me on Defendants Chloe Eudaly and City of Portland's Motion to Dismiss [16] pro se Plaintiff Mimi German's Third Amended Complaint ("TAC") [15]. For the reasons given below, I GRANT Defendants' Motion to Dismiss Ms. German's claims [16]. Claim 1 is dismissed with prejudice. Claim 2 is dismissed without prejudice against Commissioner Eudaly and with prejudice against the City of Portland. Claim 3 is dismissed without prejudice against Commissioner Eudaly and with prejudice against the City of Portland. On the claims dismissed without prejudice, Ms. German is granted leave to amend her complaint

1

to allege that Commissioner Eudaly acted under color of state law when she used her Facebook page.

## BACKGROUND

Because this case is before me on a motion to dismiss, I accept as true the facts alleged in the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Ms. German alleges the following facts:

Ms. German is a political activist who regularly attends Portland City Council meetings to offer testimony. TAC [15] at 1. On November 30, 2017, Commissioner Eudaly posted the following message on her nonofficial Facebook page:

> Mimi German (one of the disruptive frequent fliers at Council) is now spreading completely false and truly outrageous statements about my business and my history as a bookseller. She is claiming I owned Counter Media, was a purveyor of violent, woman-hating pornography and that my business was unsafe for members of the LGBTQ community. That may come as some surprise to the mostly women and many queer people who staffed, exhibited, and performed at Reading Frenzy. I didn't live in voluntary near poverty for over 22+ years in order to support independent media and serve my community to have people disparage and discredit my contributions. Of course there are always things you would do differently in hindsight, but I stand behind my policies and decisions based on the information I had at the time.
> I'm the 8th woman to ever be elected to City Council. I've been involved in activism, organizing, and advocacy of one kind or another since I was 20-years old. When I ran I was a low-income single parent and cost-burdened renter. I've overcome extraordinary life challenges to get to where I am today. I have an incredible opportunity to do an enormous amount of good for our city but I'm going to need a lot of support in order to accomplish what we came here to do. This is a libelous smear campaign and a witch hunt, a complete waste of my time and energy, and a distraction from what really matters. I can withstand the slings and arrows, but I will be damned if these people continue to be seen as contributing anything to our public process or get away with libeling me.

[11-1] at 1.[1] That post sparked a thread of comments from others, including: "Lawyer up and sue this [expletive]" SAC [14] Ex. 1 at 5; "This woman needs to be locked up in the nut house" SAC [14] Ex. 1 at 6; "I just text[ed] her and told her 100 of us think she is an [expletive]." SAC [14] Ex. 1 at 8. Commissioner Eudaly responded to some of the comments:

- In response to "[Ms. German's] poetry is too embarrassing to read through," Commissioner Eudaly said that Ms. German sometimes reads her poetry as testimony at Council meetings. SAC [14] Ex. 1 at 8.
- In response to "Never Let Em See You Sweat," Commissioner Eudaly said "I'm not sweating but I'm going to make them sweat." SAC [14] Ex. 1 at 3.
- After one commenter told another commenter that they "give the peace sign a bad name," Commissioner Eudaly responded, "[Ms. German] gives activism a bad name so I guess they're even." SAC [14] Ex. 1 at 2.
- In a response to a comment that condemned Commissioner Eudaly's post and subsequent comments, Commissioner Eudaly said, "This woman is harassing and libeling me online, spreading misinformation and impugning my character. She comes to my work on a regular basis and is verbally abusive, including screaming, '[expletive] you, Chloe' at me repeatedly. She gives irrelevant testimony, which is sometimes poetry. She's wasted hours of my time, my staff's time, and Council time. Council sessions are limited public forums. We have the right to set the time, place, and manner of speech and she routinely violates the rules. Libel is also a crime. If you are suggesting that my standing up to a bully and a liar is unethical, I'm not sure what to say to you. My job description does not include taking endless abuse without responding to it. These people do what they do in large part because no one wants to stand up to them. But people actually defending their behavior? That's something else." SAC [14] Ex. 1 at 10.
- In response to a different comment, Commissioner Eudaly said "I'm pretty sure defending myself against attacks, sharing events that are public record, and not liking someone's poetry are not crimes." SAC [14] Ex. 1 at 12.

Because Commissioner Eudaly has blocked Ms. German from viewing her private Facebook page, Ms. German cannot see or reply to these posts. TAC [15] ¶ 5. Ms. German filed a public records request to see Commissioner Eudaly's Facebook page; Commissioner Eudaly denied that request. TAC [15] ¶¶ 7, 8.

---

[1] Ms. German filed three complaints. Her First Complaint ("FAC") [11] and Second Amended Complaint ("SAC") [14] attach exhibits that are easier to read. When that is the case, I cite those exhibits instead of the exhibits in her TAC [15].

Ms. German additionally alleges that Commissioner Eudaly made up a rude song about Ms. German that called her "garbage," TAC [15] ¶ 23; scolded Ms. German for silencing other people's voices, TAC [15] ¶ 23; and repeatedly walked out of, or was absent from, City Council meetings when Ms. German testified, TAC [15] ¶¶ 14, 15. Ms. German also alleges that she requested that Portland's Bureau of Human Resources and City Council investigate Commissioner Eudaly's actions; both parties rejected Ms. German's request. TAC [15] ¶¶ 21, 22.

Ms. German brings three claims:

(1) A § 1983 claim that alleges that Defendants violated her rights under the First Amendment and Article I, section 8 of the Oregon Constitution when they retaliated against her for petitioning the government. TAC [15] ¶ 28. Ms. German says Commissioner Eudaly disparaged, embarrassed, and harassed Ms. German in the Facebook post and comments, in the "garbage song," and by sitting out of meetings while Ms. German testified. Those actions, she says, would chill a person of ordinary firmness "from continuing to engage in the protected activity of giving Public Testimony." TAC [15] ¶ 29. She further asserts that City of Portland is responsible for these violations because it engaged in a "custom, pattern, or policy" of allowing Commissioner Eudaly to retaliate or was deliberately indifferent to its failure to train, supervise, and discipline officials who do retaliate. Since § 1983 does not provide a cause of action for violations of state constitutions, Defendants construe Ms. German's complaint to allege both a § 1983 claim for violation of the federal constitution and an independent claim under the Oregon Constitution.

(2) A § 1983 claim that alleges a violation of Ms. German's right to petition the government. Specifically, Ms. German alleges that her right to petition was violated when

4

Commissioner Eudaly blocked Ms. German's access to Commissioner Eudaly's Facebook page, was absent during Ms. German's testimony, and denied Ms. German's public records request for the Facebook page information. Ms. German also alleges that her right to petition was violated by City of Portland when it failed to investigate and correct Commissioner Eudaly's conduct.

(3) A § 1983 claim for violation of due process. Ms. German alleges that Commissioner Eudaly denied Ms. German due process when she blocked her from the Facebook page, walked out during Ms. German's testimony, and denied her public records request.

For relief, Ms. German requests economic damages, non-economic damages, punitive damages, attorney fees, and costs. [15] ¶ 25. Ms. German also requests various forms of injunctive relief. TAC [15] ¶ 43. Defendants now move to dismiss each of Ms. German's claims under FRCP 12(b)(6). Mot. to Dismiss [16].

## LEGAL STANDARD

When evaluating a motion to dismiss under Rule 12(b)(6), courts are to accept the well-pleaded factual allegations of a complaint as true and construe all inferences in favor of the nonmoving party. *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016). Dismissal under Rule 12(b)(6) is warranted if a complaint fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss." *Lee*, 250 F.3d at 679. In civil rights cases involving a plaintiff proceeding pro se, the court must construe the pleadings liberally and afford the plaintiff the benefit of any doubt. *Vrooman v. Beaverton Mun. Court*, 3:16-cv-2187-AC, 2016 WL 7493967, at *3 (D. Or. Dec. 30, 2016) (citing *Butler v. Long*, 752 F.3d 1177, 1180 (9th Cir. 2014)).

A pleading should be dismissed with prejudice if "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## DISCUSSION

### I. Retaliation claim

Ms. German brings a First Amendment retaliation against Commissioner Eudaly and the City of Portland and an Oregon Constitution claim against Commissioner Eudaly. I address each in turn.

#### A. Commissioner Eudaly

Defendants allege that Commissioner Eudaly's actions do not amount to unlawful retaliation because (i) Commissioner Eudaly's Facebook comments were not under color of state law and thus cannot be the basis for a § 1983 claim, and (ii) even if Commissioner Eudaly acted under color of state law, those comments do not meet the high bar necessary to find that a public official's speech constitutes retaliation. I will address the latter argument here and will assume for these purposes that Commissioner Eudaly was acting under the color of state law.

To state a claim for First Amendment retaliation against a government official, a plaintiff must demonstrate that "(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).

Defendants do not dispute that Ms. German was engaged in constitutionally protected activity, nor do they dispute that there was a causal relationship between Ms. German's

testimony and Commissioner Eudaly's conduct. Instead, Defendants argue that Ms. German has failed to sufficiently allege an adverse action by Commissioner Eudaly that would chill a person of ordinary firmness.

"Ordinarily, the adverse retaliatory actions complained of by plaintiffs are 'exercise[s] of governmental power' that are 'regulatory, proscriptive, or compulsory in nature' and have the effect of punishing someone for his or her speech." *Mulligan v. Nichols*, 835 F.3d 983, 988 (9th Cir. 2016) (quoting *Blair*, 608 F.3d at 544). For example, the government may chill speech by threatening or causing pecuniary harm, *Bd. of Cty. Comm'rs v. Umbehr*, 518 U.S. 668, 674 (1996); withholding a license, right, or benefit, *Baird v. State Bar of Ariz.*, 401 U.S. 1, 7 (1971); prohibiting the solicitation of charitable donations, *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 633 (1980); detaining or intercepting mail, *Blount v. Rizzi*, 400 U.S. 410, 417–18 (1971); or conducting covert surveillance of church services, *The Presbyterian Church v. United States*, 870 F.2d 518, 522–23 (9th Cir. 1989). That said, the adverse action need not necessarily deprive the plaintiff of a government benefit or privilege: the First Amendment also does not allow the government "to take severe retaliatory actions—such as . . . engaging in campaigns of harassment and humiliation" or to make "threat[s] of invoking legal sanctions and other means of coercion, persuasion, and intimidation." *Coszalter v. City of Salem*, 320 F.3d 969, 975–76 (9th Cir. 2003); *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000) (citation omitted).

Where the alleged adverse action is speech by the public official, the Ninth Circuit "ha[s] set a high bar" to determine whether the speech is "sufficiently adverse to give rise to a First Amendment retaliation claim." *Mulligan*, 835 F.3d at 989. By themselves, defamation, "mere threats and harsh words," and words causing reputational harm are not sufficient to state an adverse action. *See generally id.* at 989–90. That is true even where the plaintiff suffers harm as

7

a result of the defamatory statements, for example, if his private employer fires him as a result of the public official's speech. *Id.* at 988–89.

Commissioner Eudaly's allegedly adverse actions—her Facebook comments, the garbage song, and sitting out of meetings while Ms. German testified—include both speech and conduct. The "high bar" for speech-as-retaliation applies to the Facebook comments and garbage song, and the allegations do not meet that bar. Commissioner Eudaly's comments harassed, embarrassed, and disparaged Ms. German, even to the point of "inviting . . . ridicule from the Public At Large," TAC [15] ¶ 30, but they do not amount to anything more than the "mere threats and harsh words" found insufficient to state a claim for retaliation in *Mulligan*. No "more tangible interests" were affected. *Mulligan*, 835 F.3d at 989.

The high bar that applies to speech does not apply to Commissioner Eudaly's conduct, that is, her decision to leave or not attend meetings when Ms. German was testifying. Still, Ms. German has not alleged that that conduct deprived her of any right or privilege: the Constitution does not grant to members of the public generally a right to require particular public officials to listen to them when making decisions. *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 283 (1984). And the conduct does not amount to a "campaign of harassment" or coercion. *See Coszalter*, 320 F.3d at 975. After all, Ms. German can still speak to the other councilmembers.

Ms. German has amended her complaint twice but has failed to allege actions by Commissioner Eudaly that would sufficiently state an "adverse action" as required to plead a retaliation claim. I therefore dismiss her claim for retaliation with prejudice.

### B. City of Portland

Municipalities are subject to damages under § 1983 where a constitutional violation occurred pursuant to official municipal policy, practice, custom, or decision of a person with

final policymaking authority. *See Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658 (1978). Ms. German's claim against the City of Portland fails because she has failed to properly allege a constitutional violation to begin with. *See supra* I.A. For the same reason, I dismiss with prejudice Ms. German's retaliation claim against Ms. German to the extent it is brought against her in her official capacity. *See generally Hafler v. Melo*, 502 U.S. 21, 25 (1991) (explaining that real party in interest in official-capacity suit is government entity and that same *Monell* standard applies to determine liability).

### C. Claim under the Oregon Constitution

In her § 1983 claim, Ms. German additionally alleges that Commissioner Eudaly violated Ms. German's rights under Article I, section 8 of the Oregon Constitution, as well as the "spirit of" *State v. Robertson*, 649 P.2d 569 (Or. 1982). Since § 1983 by its terms does not provide a cause of action for violations of state constitutions, I construe Ms. German's complaint to allege an independent claim under the Oregon Constitution. As an initial matter, there is no private right of action for damages under the Oregon Constitution. *See Hunter v. City of Eugene*, 787 P.2d 881, 884 (Or. 1990).

Article I, section 8 of the Oregon Constitution states: "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right." Neither party has cited, nor have I been able to find, any discussion of a freedom of speech retaliation claim under the Oregon Constitution. Against this void, I find that the Article 1, section 8 retaliation jurisprudence would align with federal First Amendment jurisprudence. While the Oregon Supreme Court interprets the Oregon Constitution to give broader protections against content-based restrictions than the First Amendment does, there is no indication in that jurisprudence or

section 8's text that the Oregon Constitution would more aggressively protect against free-speech retaliation. *See Robertson*, 649 P.2d 569. Since Ms. German has failed to state a claim for First Amendment retaliation, I hold that she also has failed to state a claim under the Oregon Constitution, and I dismiss this claim with prejudice.

## II. Right to petition claim

Ms. German alleges that Commissioner Eudaly and the City of Portland violated her right to petition the government. Ms. German also alleges that her right to petition was violated when the city failed to investigate Commissioner Eudaly's conduct. Defendants argue that these allegations do not state a claim for a violation of the right to petition.

### A. Commissioner Eudaly

#### 1. Denial of access to the Facebook page

Ms. German alleges that Commissioner Eudaly violated her First Amendment right to petition the government when Commissioner Eudaly blocked Ms. German from viewing and otherwise participating in Commissioner Eudaly's non-official Facebook account. TAC [15] ¶ 36. Defendants argue that Commissioner Eudaly's decision to block Ms. German was not state action.

In order to state a § 1983 claim, a plaintiff must allege that the relevant actions were taken "under color of state law." *See Lugar v. Edmonson Oil Co. Inc.*, 457 U.S. 922, 935 (1982). Typically, a government official acts under color of state law while acting in his official capacity or exercising his responsibility pursuant to the law. *Naffe v. Frey*, 789 F.3d 1030, 1037 (9th Cir. 2015). But an off-duty official may act under color of state law where he (1) purports to act under color of law, (2) the pretense of acting in the performance of his duties had the purpose

10

and effect of influencing the behavior of others, and (3) the harm inflicted on the plaintiff related in some way to the officer's government status or the performance of his duties. *Id.*

In support of her conclusion that Commissioner Eudaly acted under color of state law, Ms. German alleges that Commissioner Eudaly "discussed Ms. German's City Business" on the Facebook page. TAC [15] ¶ 3. And she notes that she and Commissioner Eudaly have no personal relationship. TAC [15] ¶ 3, 10. On the other hand, Ms. German also acknowledges that the Facebook page in question is Commissioner Eudaly's "non-official Facebook page" and that Commissioner Eudaly does have a separate "official Facebook page to discuss City Business." TAC [15] ¶ 2, 5.

I hold that these facts are insufficient to allege state action. Crucially, Ms. German fails to allege the first element of the *Naffe* off-duty-official analysis: that Commissioner Eudaly purported to act under color of law when she complained about Ms. German on her page. *See Naffe*, 789 F.3d at 1037. Commissioner Eudaly's post about events that occurred while she was working does not transform her non-official page into a page operated under color of state law. *Cf. Davison v. Loudon Cty. Bd. of Supervisors*, 267 F. Supp. 3d 702, 711–14 (E.D. Va. 2017) (holding that a Facebook account was operated in an official capacity where, among other things, the official referred to the page as her "County" page; used the page as a tool of governance; promoted the page in a county newsletter; included her official title on the page; addressed posts to constituents; and categorized the page as an official government page). Likewise, that Commissioner Eudaly only knows Ms. German through Commissioner Eudaly's government role does not turn her action into state action. *See Van Or v. Estate of Stanewich*, 92 F.3d 831, 838 (9th Cir. 1996) (police officer did not act under color of state law when he robbed plaintiffs, although he identified his victims during police search of their home).

11

Ms. German highlights *Knight First Amendment Institute v. Trump*, No. 17 Civ. 5205, 2018 WL 2327290 (S.D.N.Y. May 23, 2018), but that case is distinguishable. In *Knight*, the court held the President's Twitter account constituted a public forum. *Id.* at *15. The court declined to engage in a traditional state action analysis; addressing the state action question, it reasoned that because "facilities or locations deemed to be public forums are usually operated by governments, determining that a particular facility or location is a public forum usually suffices to render the challenged action taken there to be state action subject to First Amendment limitations." *Id.* (quoting *Halleck v. Manhattan Cmty. Access Corp.*, 882 F.3d 300, 306–07 (2d Cir. 2018). And the court emphasized that "[b]ecause the President and [the White House Social Media Director] use the [Twitter account] for governmental functions, the control they exercise over it is accordingly governmental in nature." *Id.* at *16. Here, by contrast, the alleged public form is not "operated by governments" but by Ms. Eudaly in her personal capacity, so I find the state action analysis appropriate. *See also id.* ("No one can seriously contend that a public official's blocking of a constituent from her purely personal Twitter account—one that she does not impress with the trappings of her office and does not use to exercise the authority of her position—would implicate forum analysis."). Under that analysis, as explained above, I find that Ms. German has not sufficiently alleged that state action.

### 2. Absence during Ms. German's testimony

Ms. German alleges that Commissioner Eudaly violated her First Amendment rights when she refused to be present for Ms. German's testimony at City Council meetings. Defendants contend that the right to petition (and the First Amendment generally) do not give Ms. German a right to force any particular government official to listen to her.

The right to petition safeguards "the right of the people . . . to petition the Government for a redress of grievances." U.S. CONST. AMEND. I. But as the Supreme Court explained in *Minnesota State Board for Community Colleges*, First Amendment rights do not entail any government obligation to listen. 465 U.S. at 285–87 ("[Plaintiffs] thus have no constitutional right as members of the public to a government audience for their policy views."). Accordingly, in *DeGrassi v. City of Glendora*, 207 F.3d 636, 647 (9th Cir. 2000), the Ninth Circuit dismissed a First Amendment claim against a law firm that had instructed a City Council to ignore a former councilmember's questions during a council meeting. The claim was "frivolous," the panel held, because "the First Amendment does not guarantee that citizens' speech will be heard." *Id.* at 647 (citing *Smith v. Ark. State Highway Emp., Local 1315*, 441 U.S. 463, 464–65 (1979) (holding that State Highway Commission could ignore grievances submitted by union without violating union's right to petition) and *Pell v. Procunier*, 417 U.S. 817, 821–22 (1974) (noting that free speech right does not require citizens to listen to someone's views)).

Thus, Ms. German's right to petition the City Council does not include the right that Commissioner Eudaly listen, or even be present for, Ms. German's testimony. City of Portland rules or policies may require Commissioner Eudaly's attendance, *see* TAC [15] ¶ 17,[2] but the First Amendment does not.

### 3. Denial of Ms. German's public records request

Ms. German alleges that Commissioner Eudaly violated her right to petition when she denied Ms. German's public records request. Defendants respond that Ms. German has no First Amendment right to a particular response from the government.

---

[2] *See also* ARB-ADM 7.02 ¶ 4 (City of Portland Auditor administrative rule, available at https://www.portlandoregon.gov/citycode/article/63123) (requiring notice of City Council member absences).

13

Just as the First Amendment does not require the government to listen, so it does not require a certain response from the government. *Smith*, 441 U.S. at 465 ("[T]he First Amendment does not impose any affirmative obligation on the government to listen [or] to respond . . . ."). In some limited circumstances, the First Amendment does guarantee access to public records, but this right has been limited to court records. *See, e.g., Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986); *In Re Opinions & Orders of this Court Addressing Bulk Collection of Data*, No. Misc. 13-08, 2018 WL 396244, at *12 (Foreign Intel. Surv. Ct. Jan. 5, 2018) (Collyer, P.J., dissenting) (citing *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978) (plurality)).

In sum, because Ms. German has failed to state a claim against Commissioner Eudaly for a violation of Ms. German's right to petition, I dismiss this claim. But since Ms. German could allege facts that could show that Commissioner Eudaly acted in her official capacity when using her nonofficial Facebook account, I dismiss Ms. German's right to petition claim against Commissioner Eudaly without prejudice as to the claim that the Facebook-page denial of access violated the First Amendment. To the extent this claim is brought against Commissioner Eudaly in her official capacity, I dismiss it with prejudice for failure to allege a policy, practice, or custom. *Hafler*, 502 U.S. at 25.

### B. City of Portland

Ms. German suggests that the City of Portland violated her right to petition when it failed to investigate or correct Commissioner Eudaly's conduct. As explained above, the First Amendment does not guarantee that the government will respond in a certain way. *Minn. State Bd.*, 465 U.S. at 285 ("Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to

listen or respond to individuals' communications on public issues."). I dismiss this claim with prejudice.

### III. Due process claim

Ms. German alleges that Commissioner Eudaly denied Ms. German due process when she blocked her from her Facebook page, walked out during Ms. German's testimony, and denied her public records request. TAC [15] ¶¶ 40–42.

#### A. Denial of access to the Facebook page

Ms. German alleges that her due process rights were violated when Commissioner Eudaly blocked Ms. German from her nonofficial Facebook page. Defendants contend that the block did not constitute state action.

As explained above, Ms. German has failed to allege that Commissioner Eudaly acted under the color of state law when she blocked Ms. German from Commissioner Eudaly's nonofficial Facebook page. Because Ms. German has failed to allege state action, she has failed to state a § 1983 claim for a due process violation arising out of the Facebook block. *See Lugar*, 457 U.S. at 935.

#### B. Absence during Ms. German's testimony

Ms. German contends that Commissioner Eudaly also violated her due process rights by refusing to be present for Ms. German's testimony. Defendants respond that they did not deny Ms. German her right to due process because Ms. German was not deprived of any constitutionally protected liberty or property interest.

A procedural due process claim arising under § 1983 has three elements: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir.

1993). The first element, a protected property interest, is present where an individual has a reasonable expectation of entitlement deriving from "existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). "A reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms." *Ass'n of Orange Co. Deputy Sheriffs v. Gates*, 716 F.2d 733, 734 (9th Cir. 1983). Statutes that require the government to follow certain procedures may give a private party a constitutionally-protected interest if the procedures "are intended to be a significant substantive restriction on . . . decision making." *Goodisman v. Lytle*, 724 F.2d 818, 820 (9th Cir. 1984) (internal quotation marks and citation omitted).

Here, Ms. German has failed to allege that she was deprived a liberty or property right when Commissioner Eudaly refused to attend city council meetings while Ms. German testified. As explained above, Commissioner Eudaly's refusal to attend did not violate Ms. German's First Amendment rights, since those rights do not require the government to listen. *Minn. State Bd.*, 465 U.S. at 285. And Ms. German points to no statute or statutory scheme that gives her an interest in Commissioner Eudaly listening to her testimony. She does allege that "City Council is mandated" to meet during the week "in order to hear City Agenda items as well as public testimony regarding those agenda items." But while Ms. German may have an interest in testifying publicly, she has not alleged a corresponding interest in the presence of a particular councilmember while she testifies.

### C. Denial of Ms. German's public records request

Ms. German alleges that Commissioner Eudaly violated her due process rights by denying Ms. German's public records request. Defendants contend that Ms. German received all process due.

At a general level, due process requires the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The analysis generally proceeds on a case-by-case basis: to consider what process is due, courts are to consider the private interest affected, the risk of erroneous deprivation and possible value of additional procedural safeguards, and the possible burden of the additional safeguards on the government's interest. *Id.* at 335.

Even assuming that Ms. German has a protected property interest in receiving the public records, Ms. German has not alleged that she failed to receive the process due (aside from the legal conclusion "I have been given no due process"). TAC [15] ¶ 41. Instead, she alleges that she filed a public records request, received an explanation for the denial, and was told that she would need to sue Commissioner Eudaly in order to appeal the public records decision. TAC [15] ¶¶ 7, 10, 12. That is the process that the Oregon Public Records Act contemplates in these circumstances: when "a person is denied the right to inspect or to receive a copy of a public record in the custody of an elected official," that person "may institute proceedings for injunctive or declaratory relief in the appropriate circuit court." O.R.S. § 192.427. Thus, Ms. Eudaly's due process claim fails because she has failed to allege the third element of a due process claim—that she failed to receive the process due. *See Portman*, 995 F.2d 898. To the extent Ms. German brings this claim against the City of Portland, the same analysis applies.

In sum, because Ms. German has failed to state a claim for violation of her right to due process, I dismiss this claim. But since Ms. German could allege facts that could show that

Commissioner Eudaly acted in her official capacity when using her nonofficial Facebook account, I dismiss Ms. German's right to petition claim against Commissioner Eudaly without prejudice as to that allegation. To the extent this claim is brought against Commissioner Eudaly in her official capacity, I dismiss it with prejudice for failure to allege a policy, practice, or custom.. *Hafler*, 502 U.S. at 25.

## CONCLUSION

I GRANT Defendants' Motion to Dismiss Ms. German's claims [16]. Claim 1 is dismissed with prejudice. Claim 2 is dismissed without prejudice as against Commissioner Eudaly and with prejudice as against the City of Portland. Claim 3 is dismissed without prejudice as against Commissioner Eudaly and with prejudice as against the City of Portland. On the claims dismissed without prejudice, Ms. German is granted leave to amend her complaint to allege that Commissioner Eudaly acted under color of state law when she used her Facebook page. Ms. German has until two weeks from the date of this opinion to file an amended complaint, if any.

Dated: June 29, 2018

MICHAEL W. MOSMAN
Chief U.S. District Judge